**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANDRE LAMAR GULIFORD, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>_____) | **CIVIL ACTION**<br><br>**No. 13-1345-KHV** |

**MEMORANDUM AND ORDER**

Andre Lamar Guliford appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. For reasons set forth below, the Court reverses the judgment of the Commissioner and remands for further proceedings.

**I.   Procedural Background**

On August 30, 2010, plaintiff applied for disability benefits, alleging a disability onset date of January 8, 2008. See Transcript Of Administrative Record ("Tr.") (Doc. #10) filed December 3, 2013 at 158-65. Plaintiff's benefit application was denied initially and on reconsideration. On March 22, 2012, following a hearing, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the Social Security Act. See Tr. at 9-25. On July 15, 2013, the Appeals Council denied plaintiff's request for review. Tr. at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. The decision of the ALJ stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g),(h).

**II.     Factual Background**

The following is a brief summary of the evidence presented to the ALJ.

Plaintiff was born on November 30, 1968 and was 42 years old on March 31, 2011 – the date he was last insured. He has a high school education and two years of college.

In January of 2008, physicians diagnosed plaintiff with cancer of the head and neck. Plaintiff applied for disability benefits and the Commissioner awarded benefits retroactive to November 19, 2007. The Commissioner later found that as of April 1, 2010 plaintiff's health had improved so that he was able to work. Plaintiff's benefits terminated on June 30, 2010.

On August 30, 2010, plaintiff filed an application to reinstate benefits, alleging that he was disabled due to head and neck cancer and neuropathy in his feet caused by chemotherapy. Plaintiff stated that he had tried to work after his benefits stopped, but that nerve damage to his feet make it painful to stand or walk, and that he also suffers from short-term memory loss. Tr. 68.

A.     Medical Evidence

On January 4, 2008, physicians admitted plaintiff to Midwest Regional Medical Center to evaluate a right neck mass. A biopsy revealed that plaintiff had squamous cell carcinoma of the head and neck. On January 17, 2008, plaintiff sought treatment from Dr. Dennis Moore at the Cancer Center of Kansas. On March 3, 2008, Dr. Eric Bunting, an ENT specialist, confirmed the diagnosis of metastatic head and neck squamous cell carcinoma. Plaintiff underwent chemotherapy and radiation.

On October 15, 2008, plaintiff's treating radiologist, Dr. Jon Anders, noted that plaintiff had completed radiation treatment and that he had a "favorable response to radiation therapy and chemo." Tr. 413-414, 416-417. On October 30, 2008 plaintiff returned to the Cancer Center for

follow-up treatment and showed "a gratifying response to treatment." Tr. 418. On December 11, 2008, the Cancer Center clinic staff determined that plaintiff continued to do well and showed no evidence of disease progression. On January 8, 2009, Dr. Bunting found that plaintiff showed "no evidence of disease following chemo[/]radiation therapy for squamous cell carcinoma of the tonsil." Tr. 428.

On February 7, 2009, plaintiff went to the Cancer Center for follow-up. He described some symptoms which appeared to be very much like Lhermitte's Syndrome, but which were "not too bothersome for him." Plaintiff showed no evidence of recurrence of cancer. Tr. 420. On February 19, 2009, a CT scan of plaintiff's neck showed no lymph modes exceeding 5 to 6 mm in diameter and no compromise of the airway. Tr. 422.

On July 1, 2009, Dr. Moore saw plaintiff and found that he was doing well but had missed some appointments. On January 25, 2010, Dr. Moore examined plaintiff for follow-up of his cancer. Dr. Moore noted that plaintiff "still has problems with neuropathy and innovating the feet bilaterally extending from mid feet distally which is worse in the winter but which generally is not limiting in terms of his function." Tr. 430, 446.

On March 10, 2010, Dr. James Henderson examined plaintiff and noted that he had diminished sensation in his toes bilaterally but that it did not affect his gait or station. Further, Dr. Henderson found that "reflexes are absent [and] he has difficulty walking on his toes. Continued surveillance is warranted." Tr. 434.

On March 30, 2010, Dr. Carol Eades, M.D., completed a physical residual functional capacity ("RFC") assessment. Tr. 437-44. Dr. Eades diagnosed neuropathy in the feet after chemotherapy. TR 437. She set out limitations as follow:

-3-

> Exertional: Stand and/or walk (with normal breaks) for a total of about six hours in an 8-hour workday;
> Postural: Occasionally climbing ladder/rope/scaffolds (Neuropathy in feet s/p chemo);
> Environmental: Avoid Concentrated Exposure to Hazards (machinery, heights, etc.) (Neuropathy in feet s/p chemo).

Tr. 438-41. Dr. Eades opined that plaintiff "has some limitations in his work." Tr. 444.

On May 13, 2010, plaintiff visited the St. Joseph Clinic complaining of a lump on the back of his neck and numbness and pain in his feet.[1] The treating physicians, Dr. Stephen Sittnick, D.O. and Dr. Doug Neef, M.D., found no new or abnormal lesions and told plaintiff to return if the condition worsened. Tr. 458. On June 14, 2010, plaintiff returned to see Dr. Sittnick, complaining of numbness and tingling in his feet when standing for long. Tr. 455. Dr. Sittnick diagnosed chronic neuropathy in plaintiff's feet secondary to nerve damage due to chemotherapy, and prescribed Neurontin. Tr. 457.

On July 13, 2010, plaintiff returned to Dr. Sittnick. Plaintiff reported constant numbness and tingling in his feet and pain when standing for an hour and with weather changes. Plaintiff told Dr. Sittnick that "disability needs a letter for [his] condition." Tr. 452. He also indicated that Neurontin was too expensive and that he wanted to try another medication. Dr. Sittnick prescribed Amitriptyline. Tr. 453.

On August 16, 2010, plaintiff returned to the Cancer Center. Dr. Moore noted that plaintiff "is now nearly 3 years out from his original diagnosis and continues to do well." Dr. Moore recommended an evaluation to address plaintiff's neuropathy. Tr. 445.

On September 3, 2010, plaintiff told Dr. Sittnick that he had tried Amitryptyline but that it

---

[1] Visit notes indicate that as to numbness, "Severity level is severe. Location of pain is foot right and foot left. The problem occurs constantly. Gait is characterized as normal." Tr. 458.

caused side effects. Tr. 450. Dr. Sittnick discontinued Amitryptyline. He offered to prescribe Gabapentin but plaintiff declined because of the cost. Tr. 451.

On October 22, 2010, Jannifer Hill-Keyes, Ph.D., an examiner for Disability Determination Services, completed a Psychiatric Review Technique. Tr. 461-471. Due to insufficient evidence, she found no medically determinable psychological impairment. Tr. 461. Further, she stated that although plaintiff reported short-term memory problems, he was functioning independently and his treating physicians had not noted memory problems. Tr. 471.

On October 27, 2010, Nisha Singh, M.D., a non-treating, reviewing medical examiner, completed an RFC assessment. Tr. 473-79. Dr. Singh noted that plaintiff had pain in his feet and that Ibuprofen helped relieve the pain. Dr. Singh stated that plaintiff could stand for two to three hours and sit for eight hours or more at a time. Dr. Singh found that plaintiff was "fairly credible in his allegations and the effects on his functioning considering the medical and non-medical evidence."[2] Tr. 478. Dr. Singh determined that plaintiff had the following physical limitations: ability to lift 50 pounds occasionally; 25 pounds frequently; stand and/or walk (with normal breaks) for about six hours in an eight hour workday; sit for about six hours out of eight; stand/walk for approximately three to four hours; and climb ramp/stairs occasionally. Dr. Singh also found that plaintiff was unable to climb ladders, ropes or scaffolds.[3]

On November 9, 2010, plaintiff saw Dr. Bart A. Grelinger, M.D., for a neurology consultation. Dr. Grelinger opined that plaintiff had toxic predominantly sensory neuropathy

---

[2] Dr. Singh noted that the file did not contain any treating or examining source statements regarding plaintiff's condition.

[3] On March 31, 2011, M. M. Legarda, a disability examiner, provided a case analysis and affirmed Dr. Singh's RFC. Tr. 492-93.

(secondary to chemotherapy) in the distal part of his feet, and that it could be a permanent residual injury. Dr. Grelinger scheduled a bilateral lower extremity nerve conduction study to determine the severity of the neuropathy and whether it was "a distal symmetric process as expected." Tr. 482. He told plaintiff that symptomatic treatment might be the only option. On November 10, 2010, the nerve conduction study suggested "mild distal lower extremity, motor greater than sensory, predominantly axonal peripheral neuropathy." Tr. 485.

On August 1, 2011, Dr. Joshua Tibba prescribed Gabapentin and Fexeril to treat plaintiff's neuropathy. Tr. 495. On August 29, 2011, Dr. Tibba evaluated plaintiff, who complained of right sided sciatic pain which he rated as an "eight" on the scale of one to ten. Dr. Tibba noted that plaintiff "lifts tires for [a] living." Dr. Tibba prescribed Naproxen and an increased dose of Flexeril, and referred plaintiff for physical therapy.

On September 12, 2011, plaintiff went to the Via Christi Rehabilitation Hospital with back pain. Evaluation notes indicated that plaintiff's job required him to lift and transfer tires weighing up to 75 pounds, and that for the past month he had pain in his lower back, right hip and leg. Plaintiff complained of constant leg pain varying between "two" to "ten" on a scale of zero to ten. Plaintiff reported increased pain with sitting and could not stoop and bend to put on shoes and socks due to back and leg pain. Plaintiff reported that he was off work until his symptoms and function improved. He had a positive straight leg raising test on the right side at approximately 50 degrees. Royce Schield, Physical Therapist, assessed hypomobile sciatic nerve from the right side, hypomobile piriformis muscle and neural tension throughout the right hip and leg which limits plaintiff's functional ability to lift, stoop and bend to do activities of daily living. Tr. 502. Schield developed a treatment plan and gave plaintiff home stretching exercises.

On October 3, 2011, plaintiff returned to the Cancer Center for a followup. Dr. Moore reviewed lab and x-ray results and recommended a routine one-year follow-up.

B.    Plaintiff's Testimony

At the ALJ hearing on March 16, 2012, plaintiff testified as follows:

Plaintiff lives with his father and uncle. He is not able to help around the house except to wash dishes or clean up around the house once in a while. Tr. 33. He has a severe sensation in his feet, which constantly feel swollen as if he has frostbite. He loses his balance if he stands too long, and gets pain up to his knees. He takes only non-prescription medication because he has no insurance to get Flexeril or other medications that he used earlier. Tr. 34. He can walk up to a block at most and sit for 20 or 30 minutes. He can stand for 30 minutes or so, but it is very uncomfortable because the balls of his feet feel swollen. Tr. 34.

The ALJ noted that in 2010, plaintiff's brother had reported that plaintiff could attend to his personal care and had no problems cleaning the house or making meals. Plaintiff replied that the report was accurate. Tr. 35. The ALJ pointed out that in 2010, plaintiff said that he could stand for two to three hours at a time and sit for eight hours. Plaintiff responded, "I don't, I don't, I don't have no recollection of filling it out. I probably did, if it says I did. I don't – the hours got be construed on it." Tr. 35.

During a typical day, plaintiff gets up and helps his father with breakfast, then gets dressed, watches TV, and does some chores. When his son and daughter come over to visit, plaintiff cooks, talks and plays games with them. Plaintiff cannot run but sometimes sits in a lawn chair and plays catch with his son.

Continuing pain in his feet keeps plaintiff from doing "just about anything" but activities that

he can do on his own time and schedule. If he hits his foot or leg on something, it feels like someone "took an icepick and strummed it up his leg." Sometimes pain wakes him up at night.

In 2006 and 2007, plaintiff sometimes made $16-17 an hour (for overtime) working at OTS Machining and Applied Industries in Oklahoma. Tr. 46-47.

In August of 2010, plaintiff worked at Johnson Controls for about a month making air conditioning units; he had to quit because he could not keep up the pace. Tr. 37-39. Plaintiff then attempted to find sedentary jobs with temporary agencies but his neuropathy presented problems with job requirements. Tr. 40.

C.    ALJ Decision

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 8, 2008 through his date last insured of March 31, 2011 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: a history of throat and neck cancer status post successful treatment with bilateral neuropathy of the feet (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c). The claimant is capable of medium exertion work; never climbing ladders, ropes, and scaffolds; only occasional climbing of ramps and stairs; and occasional operation of foot controls.

6. Through the date last insured, the claimant was capable of performing past

>   relevant work as a glass installer and a machinist. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>   7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 8, 2008, the alleged onset date, through March 31, 2011, the date last insured (20 CFR 404.1520(f)).

Tr. 14-19.

### III.   Standard Of Review

The ALJ decision is binding on the Court if supported by substantial evidence. See 42 U.S.C. § 405(g); Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987). The Court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. See White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001); Castellano v. Sec'y of HHS, 26 F.3d 1027, 1028 (10th Cir. 1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Evidence is not substantial "if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985).

### IV.   Analysis

Plaintiff bears the burden of proving disability under the Social Security Act. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under

a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. § 404.1520. If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step four.[4] Plaintiff argues that the ALJ erred in evaluating his credibility, particularly his subjective complaints of pain. Plaintiff asserts that as a result, the ALJ erred in determining his RFC.[5]

---

[4] In the alternative, at step five, the ALJ found that plaintiff is able to perform jobs which exist in the national economy.

[5] As a preliminary matter, plaintiff argues that the ALJ erred in stating that he was not under a disability at any time from January 8, 2008 through March 31, 2011. Plaintiff notes that the Commissioner previously found that plaintiff was disabled beginning November 19, 2007 to June 30, 2010. Plaintiff "strenuously objects" to the ALJ's statement, which ignores his previous period of disability benefits. Initial Brief (Doc. #13) at 29. Plaintiff expresses concern that based on the statement, the Commissioner might seek to recover previously paid benefits. Plaintiff asks the Court to remand so that the ALJ can correct this error.

The Commissioner notes that elsewhere in his opinion, the ALJ acknowledged that plaintiff had a previous closed period of benefits. Tr. 16 (plaintiff "had a prior application with benefits paid for cancer in his throat and neck . . . [s]ubsequently, his benefits were terminated secondary to an improvement in his condition."). The Commissioner has not contested plaintiff's previous award, and has not initiated any action to recover plaintiff's previously paid benefits. The Commissioner correctly points out that 42 U.S.C. § 405(g) only permits review of a final decision, and the record

(continued...)

-10-

A.      Standard For Evaluation Credibility

In reviewing ALJ credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." Casias v. Sec'y of HHS, 933 F.2d 799, 801 (10th Cir. 1991).  Credibility is the province of the ALJ.  Hamilton v. Sec'y of HHS, 961 F.2d 1495, 1499 (10th Cir. 1992).  On review of the ALJ credibility finding, plaintiff bears the burden to show that the ALJ decision was not supported by substantial evidence. Plaintiff must point to specific evidence that demonstrates error in the ALJ's rationale.  See Clark v. Astrue, Case No. 11-1331-JWL, 2012 WL 4856996, at *10-11 (D. Kan. Oct. 12, 2012) (where claimant did not point to specific evidence demonstrating error, ALJ credibility finding sufficient where four reasons cited as basis for finding).  The ALJ must explain why specific evidence relevant to each factor supports a conclusion that claimant's subjective complaints are not credible.  See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)).  So long as the ALJ sets forth the specific evidence on which he relies in evaluating claimant's credibility, he is not required to conduct a formalistic factor-by-factor recitation of the evidence.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001); see Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In making a finding about credibility, the ALJ need not totally accept or totally reject

---

[5](...continued)
presents no adverse "final decision" regarding plaintiff's past award. Although the Court agrees that the ALJ's misstatement is unfortunate and irresponsible, it is not a basis for remand standing on its own.

-11-

plaintiff's statements. See SSR 96-7p, 61 Fed. Reg. 34483, 34486 (July 2, 1996). Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." Id.

The parties agree on the standard for evaluating the credibility of plaintiff's allegations of symptoms resulting from his impairments.

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citations and quotation omitted).

In evaluating symptoms, courts recognize a non-exhaustive list of factors which the ALJ should consider. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include the following:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489). The regulations suggest additional factors which overlap and expand upon case law, as follow:

> Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures

> plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.

20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B. ALJ Credibility Analysis

Here, the ALJ began his credibility determination by noting plaintiff's testimony that he could not walk more than a block at a time, sit for longer than 20 minutes, or stand for 30 minutes. Tr. 15, 34. The ALJ pointed out that in contrast, plaintiff's responses to a daily activities questionnaire in 2010 suggested that he retained greater abilities than he acknowledged during his hearing. Tr. 15. Specifically, in 2010, plaintiff had reported that he washed dishes, prepared meals and went shopping once a month for an hour at a time.[6] Tr. 15, 334-39.[7]

The ALJ also found that plaintiff's treatment notes and results of independent examinations did not support the degree of limitation to which plaintiff testified. Specifically, the ALJ stated that although treatment records indicated that plaintiff's neuropathy was consistent from May of 2010 onward, plaintiff testified in March of 2012 that he engaged in significantly less activity than he had reported to treating doctors in September of 2010.

The ALJ also cited other inconsistences between plaintiff's testimony and other evidence which adversely affected his credibility, as follows:

> Primarily, he testified to making $16-17/hour and working overtime in 2006 and

---

[6] While rarely determinative, claimant's daily activities are an appropriate part of the credibility assessment. See 20 C.F.R. § 404.1529(3)(i); White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Wilson v. Astrue, 602 F.3d 1136, 1146 (10th Cir. 2010) (factors cited by ALJ included daily activities); cf. Krauser v Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011) (sporadic performance of household tasks or work does not establish claimant capable of substantial gainful activity).

[7] In the questionnaire, plaintiff described symptoms including foot pain and difficulty walking more than 200 feet. Tr. 15, 334, 338.

-13-

> 2007. However, the earnings record shows income of no more than $2400 annually for these two years (Exhibit 3D). The claimant reported he has not seen a doctor since his August 2011 check up for his cancer treatment and has not worked. However, his treatment record indicated treatment for a backache secondary to lifting tires in August and September of 2011 consistent with the claimant's age and birth date. The backache was primarily from lifting tires/performing manual labor. The work was noted both in late August and mid September. During the late August visit the claimant's work lifting tires was noted with the addition of his previous medical problem of neuropathy. . . . inconsistencies in the records draw serious question to the claimant's voracity [sic] at the hearing such that these inconsistencies required attention. Additionally, the opinion evidence in the record did not reflect the claimant's alleged limitations.

Tr. 16-17. The record supports these reasons for discrediting plaintiff's testimony, but several other reasons which the ALJ gave for finding plaintiff's complaints incredible are not supported by the evidence.

First, in finding that plaintiff was not credible, the ALJ noted that in October of 2011, plaintiff's cancer specialist, Dr. Moore, found no motor deficits and no sensory loss and "did not indicate the claimant had continued problems with numbness or pain in his feet." Tr. 16. As plaintiff points out, however, Dr. Moore examined plaintiff to assess whether he had a recurrence of cancer; the record does not indicate that Dr. Moore asked about plaintiff's neuropathy. See Ex. 20F (on assessment check list, blanks for "extremities" and "neurological concerns" left blank).

Second, plaintiff correctly notes that the ALJ overlooked complaints to Dr. Grelinger in November of 2010 and to Dr. Knabe on August 8, 2011 that his feet felt "frostbit" and that they felt as though they would "burst." Tr. 33, 480, 489, 494.

Third, in noting plaintiff's testimony that he takes only over-the-counter pain medication, the ALJ overlooked plaintiff's testimony that he stopped taking prescription medication because of

the cost.[8] Thus, the ALJ discounted plaintiff's complaints of pain in part because plaintiff took only over-the-counter-pain medication, but he did not address evidence that plaintiff stopped taking prescription pain medication due to the expense. Under SSR 96-7p, 1996 WL 374186, at *7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." Further, the fact that an individual may be unable to afford treatment is a legitimate excuse. See id. at *8; Madron v. Astrue, 311 Fed. Appx. 170 (10th Cir. 2009).

A credibility assessment requires consideration of all factors "in combination," Huston v. Bowen, 838 F.2d 1125, at 1132 n.7 (10th Cir. 1988). Therefore, when several of the factors relied upon by the ALJ are unsupported or contradicted by the record, the Court cannot weigh the remaining factors to determine whether they are independently sufficient to support the credibility determination.

The Court does not address the ALJ's conclusion that plaintiff had the RFC to return to his former work because the RFC relies – at least in part – upon the ALJ's determination that plaintiff's subjective complaints of pain were not credible.

---

[8] Treatment notes substantiate this testimony.

**IT IS THEREFORE ORDERED** that the Commissioner's decision be and hereby is **REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING** the case for further proceedings in accordance with this <u>Memorandum And Order</u>.

Dated this 24th day of April, 2015 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge